[No. 5850. Decided February 26, 1906.]

E. B. McCowan, *Respondent,* v. Northeastern Siberian Company, Limited, *Appellant.*[1]

Trial—Nonsuit. If there is any sufficient evidence to sustain a verdict for the plaintiff, a nonsuit should be denied.

Contracts—Employment—Amount of Salary—Evidence—Sufficiency. Upon an issue as to the amount of plaintiff's salary under a contract of employment, a clear and positive statement by the plaintiff that the same was to be a certain sum for five months and at the same rate if longer engaged, supported by a general statement as to the nature of his duties and responsibilities, amounts to substantial evidence requiring the denial of a motion for nonsuit, although his statements are positively denied by two witnesses.

Same—Evidence—Admissibility—Extent of Business. Upon an issue as to the amount of salary agreed upon in a special contract, evidence as to the character of the business of the employer and the extent of its business is relevant and admissible to show the probability of the contract.

Same—Capital Stock of Corporation. Upon an issue as to the making of a contract of employment with a corporation, the receipt of evidence of the amount of the capital stock of the defendant, brought out on the cross-examination of a witness in showing the interest of the witness in the controversy as a stockholder, is not prejudicial error.

Trial—Instructions as to Weight of Evidence. Where, upon the material point in issue, a witness on one side is contradicted by two witnesses on the other side, it is proper for the court to instruct the jury that the preponderance of the evidence is not necessarily determined by the greater number of witnesses; and it was error to instruct that the weight of the evidence was with the greater number of witnesses and that the testimony of two unimpeached witnesses cannot be disregarded.

Appeal from a judgment of the superior court for King county, Morris J., entered April 28, 1905, upon the verdict of a jury rendered in favor of the plaintiff, in an action on a contract of employment. Affirmed.

*John P. Hartman,* for appellant.

*Kirkpatrick & Price,* for respondent.

[1]Reported in 84 Pac. 614.

FULLERTON, J.—The respondent brought this action against the appellant to recover a balance, claimed by him to be due for services rendered the appellant. In his complaint he alleged that he was employed by the appellant to act as its confidential agent, attorney in fact, and manager, in connection with its business in Japan, Siberia, and elsewhere, and that his services began on April 23, 1903, and ended on April 7, 1904; that, by the terms of his contract of employment, the appellant agreed to pay him the sum of $2,500 for a period of five months, and five hundred dollars a month thereafter so long as he should remain in its employ. He then alleged that he was entitled to receive for his services the sum of $5,733; that he had received $4,947; which left a balance due him of $785, in which amount he demanded judgment.

For answer the appellant admitted that it had employed the respondent to render services for it, as alleged in the complaint, but averred that it had agreed to pay him therefor the sum of $2,500, and no more; that there had come into the possession of the respondent, during the course of his employment, large sums of money, and that he had retained thereof $4,947, which was $2,477 in excess of the amount due him under his contract, and it demanded judgment against him for that sum. On the issues thus made, a trial was had before the court and a jury, which resulted in a verdict and judgment in favor of the respondent for the amount claimed by him. This appeal is from that judgment.

It is first assigned that the court erred in refusing to grant the appellant's motion for a nonsuit, on the ground that the evidence introduced on behalf of the respondent was insufficient to sustain a verdict in his favor. In his argument in support of the contention, the appellant's counsel quotes from the decisions of the Supreme Court of the United States, and from those of this state following that court, the rule to the effect that the question before the court

is not whether there is literally no evidence on the question at issue, but whether there is any upon which the jury can properly proceed to find a verdict for the party producing it—the party on whom the burden of proof is imposed; and he argues further that, while in this case there may be a scintilla of evidence in favor of the respondent, there is no substantial evidence sustaining his side of the controversy, and hence no sufficient evidence to sustain the verdict. The rule of law here announced by the appellant must be conceded. Unquestionably, if it be true that there was no more than a scintilla of evidence in favor of the respondent, or—to state the rule in another form—no substantial evidence in his favor, then the judgment must be set aside. The question therefore is, was there any substantial evidence on which the judgment can be sustained?

On the immediate question of the amount of compensation the respondent was to receive, there was no direct testimony save his own, given while testifying on his own behalf, and that of the appellant's witnesses testifying in contradiction. The respondent, after testifying that the contract of employment was made between himself and one John Rosene, the resident director and manager of the appellant, acting on its behalf, and of the negotiations leading up to his employment, continued as follows:

"A day or two before we sailed, Mr. Rosene said, 'Now about your salary.' He said, 'It might happen that you would not stay over there, or we would not need you, or you would not want to stay longer than the end of the season, owing to these fishermen might get left on the coast and you will have to get back to Vladivostok about October 1st perhaps. In case you should not stay, or we would not want you to stay, your pay will be twenty-five hundred dollars for the season.' I said, 'that would not be right, because I quit more money than that, and the season would be the same as the year, and before I could get back the year will be gone;' and he said, 'Your precaution is unnecessary, anyway; we will undoubtedly want you, for

perhaps I will want you to go to St. Petersburg and meet me there. You go along and your pay will be twenty-five hundred dollars for the season of five months, and if you stay beyond that it will be at that rate, or at any rate I will do what is right by you.' "

In addition to this he testified concerning the employment he quit in order to engage with the appellant, the nature of his duties with the appellant, the responsibilities he assumed, and the character of the business in which the appellant was engaged.

It seems to us that there was here something more than a scintilla of evidence supporting the respondent. In the above quotation, he testifies clearly and positively that he was to have $2,500 for the season of five months, and salary at the same rate if he was engaged longer, and his general statement as to the nature of his duties and responsibilities supports, rather than weakens, the force of his testimony. Therefore, notwithstanding his statements were positively denied by the two witnesses on behalf of the appellant, we think it was a question for the jury to say whether his statement or the statement of the appellant's witnesses contained the truth, and that we cannot rightly interfere with their finding.

The second assignment is that the court erred in admitting testimony concerning the character of the business the appellant was engaged in, the extent of its operation, and the amount of its capital stock. To show the character of the appellant's business, the extent of its operations, and the respondent's connection with this business while in its employ, was admissible and material on the question of the truth or falsity of his statements concerning the salary he was to receive. It is held by this court, in common with many other courts, that, in controversies where a special agreement is alleged on one side and denied on the other, it is relevant to put in evidence any circumstances which tend to make the question at issue more or less probable; this,

not to change the contract, but as evidence of what it was. *Wheeler v. Buck & Co.*, 23 Wash. 679, 63 Pac. 566; *Dimmick v. Collins*, 24 Wash. 78, 63 Pac. 1101.

The amount of the appellant's capital stock was not material for this purpose, but this was brought out on the cross-examination of Mr. Rosene while he was being questioned as to his interests in the controversy, and was admissible as showing the interest of the witness in the controversy. But had it been wholly immaterial, it could in no way have prejudiced the appellant's case. The jury must be credited with at least a *modicum* of intelligence, and it is idle to say that they might have found for the appellant on the question before them here had it not been shown that the appellant's capital stock was much or little.

The court instructed the jury to the effect that in determining the preponderance of the evidence they might take into consideration the demeanor of the witnesses while on the witness stand, their candor or lack of candor, their bias, prejudice, or interest in the result if any, and their means of knowledge concerning the matters of which they testified; instructing them further in this connection that the preponderance of the evidence was not necessarily determined by the greater number of witnesses, but that they were to make up their verdict from the whole of the evidence, giving weight to that part of the evidence the "veracity of which they had the most confidence in." It is contended that this instruction, while correct as a general principle, was misleading and prejudicial in this instance, because of the somewhat peculiar circumstances of the case. It is argued that inasmuch as there were two witnesses on the part of the appellant, while the respondent was alone as to the material part of the contract, it was the duty of the court to instruct the jury "that generally speaking, and other things being equal, the weight of the evidence was with the greater number of witnesses, and that the testimony of two unimpeached witnesses could not be disregarded." But mani-

festly the rule is in accord with the instruction given by the court, and not with the contention of the appellant. While it may be proper in certain cases to tell the jury that, other things being equal, the weight of the evidence is likely to be found with the greater number of witnesses, it would be grossly improper to tell them that they could not disregard the testimony of two unimpeached witnesses, or that they could not find in favor of that party on whose side only one witness testified because two unimpeached witnesses testified the other way. To give such an instruction would be to usurp the province of the jury. Where there is a substantial conflict in the evidence, the question on which side it preponderates is always for the jury.

There being no error in the record the judgment will stand affirmed.

MOUNT, C. J., HADLEY, ROOT, CROW, and DUNBAR, JJ., concur.